LAW OFFICES
# ROBERT Y. ALTCHILER

_____

590 MADISON AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE: 212.541.2422
FACSIMILE: 877.495.5970
EMAIL: ALTCHLAW@AOL.COM

181 OLD POST ROAD
SOUTHPORT, CONNECTICUT 06890
TELEPHONE: 203.255.0101
FACSIMILE: 877.495.5970
EMAIL: ALTCHLAW@AOL.COM

April 12, 2005

The Honorable Robert N. Chatigny
United States District Court               SENTENCING MEMO
450 Main Street
Hartford, CT 06103

**United States v. Donna Johnson**
**3:03 CR 198(RNC)**

Your Honor:

We submit this for your consideration, in anticipation of the defendant's sentencing. We ask the Court to consider the following as part of its assessment as to what is a "sufficient," but not "greater than necessary," sentence for the defendant, under the law.

Donna Johnson stands before this Court for sentencing, a 44 year old woman suffering from Avascular Necrosis, a debilitating bone disease; long-term substance addiction, to alcohol, pain medication, and heroin; and depression and bipolar disorder. For the last twenty years or so, Ms. Johnson's life has been dominated by pain, both physical and emotional, and by her poorly conceived and managed attempts to survive through self-medication. Looking back at the various legal problems she has created for herself, the common thread is drugs, or the theft of property to be used to purchase drugs. There is no end in sight to the pain she has been experiencing, for she knows her

immediate future will involve a recurrence of the surgery-convalescence-rehabilitation

cycle she has been living these past several months. Ms. Johnson is also aware that she

must be punished for her conduct in this case.  Accordingly, we respectfully request that

this Court impose a sentence that will achieve the overriding goals of sentencing, while

allowing her to take her best shot at allowing the medical community to repair her body

as best as they can, which will hopefully provide her the opportunity to lead a somewhat

normal life, free of pain and addiction. More specifically, we ask the Court to sentence

Ms. Johnson to a period of home detention and probation, under whatever conditions the

Court believes will accomplish the purposes of sentencing, allow her to continue

necessary surgeries, and not jeopardize her already demonstrably fragile health. We

suggest that Ms. Johnson presents a unique and tragic combination of heath-related

circumstances, which combined with a criminal past dominated by her attempts as an

addict to procure drugs for herself, and her small role in this case, justify our request.


BACKGROUND

About two weeks ago the defendant was examined by Dr. Thomas Arkins, who told

her that her body was healing well from spinal surgery, with no potential problems at

that time. Shortly thereafter, Ms, Johnson consulted with Dr. Peter Tomak, the surgeon

who performed her most recent surgery, who examined X-rays of her back as part of the

examination. Dr Tomak said he observed a possible loose screw on one of the brace rods

on either side of her back. Dr. Tomak scheduled another set of X-Rays to be taken on

April 25, in order to determine if the area looked better. If that scheduled set of X-rays

does not show satisfactory healing, Ms. Johnson has been told, that would mean the

spinal disk fusion did not take properly, and additional surgery will be necessary.  The

possibility of future surgery was forewarned by Dr. Tomak. As he documented in his

report of his November 30, 2004 examination of Ms. Johnson:

> I counseled the patient at length regarding the nature of her lumbar fusion, how
> this is performed and the risks and benefits associated with this. I discussed that
> there would be probably a 50% chance that she would be better, but a 50% chance
> that she would receive no relief from her lower back pain. I told her she is at risk
> for cerebraospinal fluid leak, nerve root injury, failed fusion and adjacent level
> disease. I told her that the surgery could prompt further operations secondary to
> instability and complications due to this fusion. I have told her that she is at risk for
> wound infection and risks from general anesthesia. (See attached report).

That is one of Ms. Johnson's immediate problems. PSR paragraphs 39-42 aptly

describe Ms. Johnson's immediate medical past.  The immediate past and its impact

on Ms.Johnson, were described by her husband, Walter:

> These conditions have followed and are ongoing after three major procedures
> involving surgery. The first two led to complications involving further surgical
> procedures. #1 was the removal of excess cartilage on the right hip due to the loss
> of feeling and ability to bare weight. After this surgery a deep infection of the
> wound area came about and required an additional 30 day private germ free room
> stay to get the infection under control and then begin the healing process. #2 was
> Hip Replacement Surgery on the left side which was successful but during home
> recovery a slip and fall occurred and resulted in a lengthwise split of the femur
> bone. This required immediate surgery to install wire and bracing around the
> effected area for healing and continued recovery from hip replacement. #3 was
> major spine surgery which involved the complete replacement of one vertebrae and
> fusion of a second one with permanent rod bracing installed along the sides of the
> area. At this time following these procedures even while being on a safe level of
> medication Donna experiences constant pain of different levels and the loss of use
> and feeling of the left leg at various times of the day everyday. Donna is confined
> to a couch for most of the day and when she does have to get up she must strap on a
> custom made back brace before standing up. She cannot get up or walk without the
> use of crutches. [Some details deleted due to the private and potentially
> embarrassing nature of the disclosure]. Walking distance has to be limited to
> around 25 feet or she becomes exhausted and needs to stop and rest. She is unable

to fully dress herself or make meals showers, etc., on her own. She has been fitted with an electrical stimulation device that has to be worn 24 hours a day to promote healing of the spine surgery and will need to be worn for at least six to nine months. Another surgery is planned for the removal of the brace hardware in the left thigh from the split femur. This will be done following the complete healing of the spine surgery [w]hich could be from 12 to 24 months per doctors['] estimation.

Earlier today, Ms. Johnson received more discouraging news at her visit to Dr. Michael Luchini:

> Upon my visit today after x-rays were taken of my left leg I was told by Dr Michael Luchini that I would need another operation to my left hip. He had his brother also out of this same office Dr Philip Luchini step in for another opinion of this and both decided I would need to see a specialist involving delicate nerve surgery. Their assessment of my present condition is at this point my left hip does not rotate at all and has locked up. There is also a piece of cartilage of good size grown outward in the area causing numbness of the leg. I was given an appointment on 5/12/2005 to see specialist Dr Jack Irving between this outcome and my latest back x-rays to be taken on 4/25/2005 all Drs will consult and decide the next course of action. The back doctors wanted to wait a typical up to 18 months before removing hardware installed on my spine to brace the fusion and disc replacement but the opinions of the leg doctors say an operation will most likely be needed soon to correct the hip problems so that this condition will not adversely effect my spine healing. Also while there Dr Luchini also made plans to repair a sunken scar left from bone disease surgery in 2001 at this point the incision has cracked open and has started to bleed slightly. This will require a type of reconstructive surgery that Dr Luchini will perform.
>
> - Donna Johnson, April 12, 2005

As can be seen, Ms. Johnson's present is, and immediate past existence has been, a life of pain, restriction and survival.

PSR paragraph 43 reinforces the crippling role pain plays in her life, and demonstrates other physical problems she suffers. For example, Ms. Johnson takes

medication not only for pain, but for asthma, nerve damage and sleeploss. As of

April 12, 2005, Ms. Johnson uses the following medications:

1) Fentanyl Duralgesic Patches -175 mg 1 patch every 48 hours (Pain Medication)
2) Tizadine- 4mg as needed (Muscle Spasms)
3) Neurontin -800mg 3 times a day (Nerve Damage)
4) Zonegram -100mg 2 times a day (Nerve Damage)
5) Imitrex Stat Dose System Single Shot Doses- for relieve of severe migraine headache
6) Seraquel -50mg taken at night (Sleep Aid)
7) Advair -100mg for asthma relief
8) Protonix -40mg 1 per day (Acid Reflux)
9) Nasacort Spray Nasal Hydration- due to asthma medication

Ms. Johnson is not only legally disabled, she is actually disabled.

<u>ARGUMENT</u>

In <u>United States v. Booker</u>,  125 S.Ct. 738(2005), the Supreme Court held that

<u>Blakely v. Washington</u> applied to the federal sentencing guidelines, and that the Sixth

Amendment's jury trial guarantee prevented judges from finding facts that exposed a

defendant to increased prison time.  As a remedy, a different majority of the Court

excised the provision of the Sentencing Reform Act that made the guidelines mandatory,

18 U.S.C. § 3553 (a)(4) & (5), but must also consider the other directives set forth in §

3553(a).  Thus, under <u>Booker</u>, courts must treat the guidelines as just one of a number of

sentencing factors.

Section 3553(a) requires courts to "impose a sentence **sufficient, but not greater**

**than necessary**, to comply with the purposes set forth in paragraph 2."  Section

3553(a)(2) states that such purposes are:

> A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        B.  To afford adequate deterrence to criminal conduct;

        C.  To protect the public from further crimes of the defendant; and

        D.  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Importantly, a sentencing court may fashion a punishment in order to accommodate a specific medical need of a defendant. Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines, without regard to the 3553(a) factors. The majority in Booker, rejected mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directed courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore.  For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant."  But under the guidelines, courts are generally forbidden to consider the defendant's age. U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socioeconomic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12.  The guidelines' prohibition of considering these factors is inconsistent with the § 3553(a)(1) requirement that the court evaluate the

"history and characteristics" of the defendant.  The only aspect of a defendant's history

that the guidelines permit courts to consider is criminal history.  Thus, in cases in which

a defendant's history and character merit consideration, as here, application of those to

all of the § 3553(a) factors might call for a sentence outside the guideline range.

In some cases the guidelines will clash with § 3553(a)'s primary directive:  to

"impose a sentence sufficient, but not greater than necessary to comply with the

purposes" of sentencing.  Now in such cases, where the guidelines are one of many

factors to be considered, the overriding purposes of sentencing should control.

After **Booker**, courts should not follow the old guideline and "departure"

methodology.  The guidelines are not binding, and courts need not justify a sentence

outside of them by citing factors that take the case outside the "heartland."  Rather,

courts are free to disagree, in individual cases and in the exercise of discretion, with the

actual range proposed by the guidelines, so long as that the ultimate sentence is

reasonable and carefully supported by reasons tied to the § 3553(a) factors.

We ask the Court, after carefully considering all of the evidence and applying all

of the § 3553(a) factors, to impose a sentence which is sufficient, but not greater than

necessary, to satisfy the purposes of sentencing.

The offense was serious as all narcotics violations are.   However, defendant's

involvement was not motivated by profit or financial gain.  Under § 3553(a) and the

decisions of the Supreme Court, a sentencing court may properly consider a defendant's

motive, Wisconsin v. Mitchell, 508 U.S. 5476, 485 (1993) (stating that "the defendant's

motive for committing the offense is one important factor").

Defendant's criminal history  level under the advisory guidelines is largely the

product of the narcotics offenses committed by Ms. Johnson for the purpose of allowing

her to self medicate to deal with her pain, physical and emotional.  She is an addict and

has been for approximately two decades   One of the primary limitations of the

guidelines, is the mechanical correlation between the number of offenses and criminal

history points.  In this instance, the advisory guidelines treat a person who acted out

against others in a threatening or physical manner the same way as someone who, due to

addiction, has repeatedly been caught procuring small quantities of narcotics, as in Ms.

Johnson's case.   Thus, we ask the Court to consider the nature of the case in assessing

what is reasonable and what is necessary.

In the Court's mandated consideration of the guidelines as one factor in sentencing,

and in its fashioning an appropriate sentence under Sec. 3553 (a), we as the Court to

consider  the following positions an/or combination of positions:

1.      **The advisory guidelines are "greater than necessary", and overly harsh in this instance, and the purpose of sentencing is satisfied by a sentence below the guidelines**. Ms. Johnson's involvement in the case was limited to procuring a small quantity of narcotics, for herself and friends of hers. Given this, and the rigid guideline assessment an application of criminal history points, without consideration of the nature of the underlying crimes and the defendant's health, warrant application of the guidelines here draconian and greater than necessary. **See  U.S. v. Jones**, 2005 WL 121730 (D.Me.,2005)(post Booker, where mentally ill defendant convicted of possessing firearm and guidelines are 12 to 18 months, and where he doesn't qualify for other downward departures, and because guidelines only advisory, a sentence below the guidelines to Zone C (6 months—time served) will better insure continuing medical care, or other correctional treatment in the most effective manner and "the marginal protection to the public afforded by a few more months in prison is more than offset by the increased risk upon this defendant's later release after the interruption of his treatment and other regimens" So the sentence imposed "will in all likelihood better protect the public over the long term."); and, **United States v. Redemann,** 295 F. Supp. 2d 887 (E.D. Wisc. 2003) (in bank fraud case where guidelines were 18-24 months, court departed downward two levels in part because case outside the heartland and the guideline

sentence was "greater than necessary" to satisfy the "purposes" of sentencing 5K2.20.
"Courts have long recognized that where the sentence called for by the guidelines would
result in punishment greater than necessary the court can depart downward." Here D had
been civilly prosecuted by the office of the comptroller of the currency and had to pay
$75,000, suffered adverse publicity in small town, ruined his business, and caused ill
health and ultimate death of his wife—so "the primary purposes of sentencing were
partially achieved before the case was filed....and [the collateral punishment] partially
satisfied the need for just punishment—district judges may consider such successive
punishments ...in deciding whether to depart...."; also general deterrence achieved given
what happened to the defendant ); *United States v. Gaind*, 829 F.Supp. 669 (S.D.N. Y.
1993) (departure granted in part because the destruction of the defendant's business
already achieved to a significant extent some although not all of the objectives otherwise
required to be sought through the sentencing process so 18 U.S.C. section 3553(a),
which states that "court shall impose a sentence sufficient, but not greater than
necessary" to achieve the purposes of sentencing "requires me to depart downward from
the Guidelines"), *aff'd*, 31 F.3d 73 (2nd Cir. 1994). **See also** United States v. Stockton
968 F.2d 715, 721 (8th Cir 1992) (Bright, Senior Judge, Concurring) ( guideline
sentence "have gone awry" with sentence of 20 years for first time methamphetamine
offender and is "excessively long" and "greater than necessary" and "cannot be
justified in a civilized society"); United States v. Andruska, 964 F.2d 640, 646-47 (7th
Cir. 1992)(Will, Senior Judge, concurring) ("the irrationality and draconian nature of the
Guidelines sentencing process is again unhappily reflected in this case"); United States
v. England, 966 F.2d 403, 410 (8th Cir. 1992) (Bright, J., concurring)(Although not
illegal, the "draconian" sentences in this methamphetamine case  "emanate from a
scheme gone awry."). United States v. Harrington, 947 F.2d 956, 964 (D.C. Cir. 1991)
(Edwards, J., concurring) (the guidelines "often produce harsh results that are patently
unfair because they fail to take account of individual circumstances...."); U.S. v.
Molina, 963 F.Supp. 213, *215 (E.D.N.Y.,1997)(commenting on "[t]he all-too-familiar
harshness required by rigid federal Guidelines...and the depredations they wreak upon
individual defendants and their families.")


2.      **The criminal conduct in this instance is atypical and outside the heartland of the
        guideline**. **See** USSG ch. 1. Pt A comment 4(b)(departure proper where conduct
        "atypical" and "significantly differs from the norm" of conduct covered by the
        guideline); Koon, 518 U.S. at 100 ("the severity of the misconduct, its timing, and the
        disruption it causes" are factors which influence a district court's determination of
        whether the misconduct in a particular instance makes the case atypical); U.S.  v. Parish,
        308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child porn case because
        defendant's possession of photographs, which were automatically downloaded when he
        viewed the documents, was outside the heartland of  much more serious crimes that
        typical pornographers engage in, according to psychiatrist) [*distinguish* U.S. v.
        Thompson, 315 F.3d 1071 (9th Cir. 2002) (no departure because not outside heartland
        where D not only  deliberately possessed but also distributed porn)]; U.S.  v. Sicken,
        223 F.3d 1169 (10th Cir. 2000) (where anti-nuclear protestors, convicted of sabotage,
        destroyed property at missile sight but posed no real danger to national security, four

level departure proper because district court could consider that guideline failed to adequately consider range of seriousness of sabotage offenses and this case outside the heartland); U.S. v. Sanchez-Rodriguez, 161 F.3d 556, 561 (9th Cir. 1998) (en banc) (affirming downward departure in sentencing for illegal reentry following aggravated felony based on minimal amount of drugs involved in underlying felony); U.S. v. Stockheimer, 157 F.3d 1082, 1091 (7th Cir.1998) (noting permissibility of downward departure where intended loss related to fraud conviction overstated seriousness of offense in comparison to realistic possibility of actual loss); **See also,** U.S. v. Rosenthal, 266 F.Supp.2d 1068 (N.D. Cal. 2003) (Breyer, J.) (in marijuana case, downward departure to one day in jail from 30-month range granted because defendant reasonably believed he was authorized by city of Oakland to grow marijuana for medicinal purposes taking this outside the heartland of drug cases); U.S. v. Allen, 250 F.Supp.2d 317 (SDNY 2002)(Where D convicted of drugs and guns, D entitled to 8 level departure under USSG 5K2.0 from 80 months to 30 months because his mental immaturity-even though 21 behaves like 14 year old and psychological problems and mild retardation take case out of heartland of drug and gun cases); U.S. v. Singh, 224 F.Supp.2d 962 (E.D.Pa. 2002) (where defendant illegally reentered in order to visit his dying mother and only intended to stay in country one week –as evidenced by airline ticket—departure from 37 months to 21 months proper); U.S. v. Koczuk, 166 F.Supp. 2d 757 (ED.N.Y. 2001) (where D acquitted of five counts of illegally importing caviar but convicted of single count with market value less than $100,000, but where co-D convicted of six counts of importing  $11million dollars worth, offense level "has been extraordinarily magnified by a circumstance that bears little relation to defendant's role in the offense" – here D's role in conspiracy "bore little correlation to 11 million dollars because D "was not actively involved in co-D business was "merely a low level employee – chauffeur and interpreter – who "took orders from co-D"4-level minimal role reduction simply not adequate);  U.S. v. Nachamie, 121 F.Supp.2d 285 , 297(S.D.N.Y. 2000) (the circuit has recognized that a district court can consider a defendant's initial lack of intent in granting a downward departure under §5K2.0.  That defendants did not join Nachamie's scheme with criminal intent – and then operated for an additional period of time with "diminished" intent – makes this an "atypical" case that "significantly differs from the norm" and therefore falls outside the "heartland" of the fraud Guidelines.).

3.    **The downward adjustment for role in the offense is inadequate to show defendant's true role as an addict procuring drugs for herself and friends**. See U.S. v. Stuart, 22 F.3d 76, 83-84 (3d Cir. 1994) (court may depart where offense level overstates culpability due to external circumstances, even where defendant's conduct renders him ineligible for §3B1.2 adjustment); U.S. v. Alba, 933 F.2d 1117, 1121 (2d Cir. 1991) ("though limited participation in the offense is a factor taken into consideration by the Sentencing Commission, a departure is justified here because the defendant played only a small role in the sale, and indeed was unaware he was involved in a drug transaction until "shortly before the incident."). See  U.S. v. Koczuk, 166 F.Supp. 2d  757 (ED.N.Y. 2001) (where D acquitted of five counts but convicted of single count of importing caviar with market value less than $100,000, but where co-D

convicted of six counts of importing $11million dollars worth, offense level "*has been extraordinarily magnified by a circumstance that bears little relation to defendants' role in the offense*" – here D's role in conspiracy "bore little correlation to 11 million dollars because D "was not actively involved in co-D business was "merely a low level employee – chauffeur and interpreter – who "took orders from co-D"4-level minimal role reduction simply not adequate); U.S. v. Bruder, 103 F.Supp.2d 155, 181 (E.D.N.Y. 2000) (where police officer assisted another in sexual assault of prisoner (Louima), two level departure granted in addition to two level adjustment for minor role because adjustment inadequate to show peripheral role).

4.      **Because the defendant's past crimes were the product of her addiction and attempts to self medicate, the defendant's criminal history overrepresents the seriousness of past criminal conduct**. Ms. Johnson's criminal past is dominated by her attempts to procure drugs to feed her own addiction, and by attempts to finance the procurement of drugs. **See** U.S. v. Lacy, 99 F.Supp.2d 108, 119  (D.Mass. 2000) (departing where D's record "largely non-violent, and relatively minor, the kind that characterizes and out-of-control addict); U.S. v. DeJesus, 75 F.Supp. 2d 141, 144 (S.D.N.Y. 1999) (criminal category V over represented D's criminal history where several priors were probation terms and, of three jail sentences, only one longer that 60 days, and two of eight convictions were for loitering and trespassing and did not count for guideline purposes, and remaining six convictions resulted in no more than 2 years jail, and most conduct committed before D was 21 – and now that D married and father more responsible – "a lengthy sentence required by higher criminal history category will lessen not increase the likelihood of rehabilitation."); U.S v. Hammond, 37 F.Supp.2d 204 (EDNY 1999) (departing from category VI to III where D "had no history violent behavior and his prior arrests resulted from minor drug crimes …and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of drugs."); U.S. v. Leviner, 31 F.Supp.2d 23 (D. Mass. 1998) (category V, based on traffic violations that accounted for 7 criminal history points, over-represented relatively minor and non-violent nature of defendants record and replicated disparities in state sentencing scheme, particularly racial disparities); U.S. v. Miranda, 979 F.Supp. 1040, 1044  (D.N.J. 1997) (discounting traffic convictions "distinct in seriousness and kind from the instant offense"); U.S. v. Taylor, 843 F. Supp. 38 (W.D.Pa. 1993) (downward departure from career offender level 34 to level 20 justified where prior state burglary convictions were more than ten years old and occurred when D a teenager, the crimes did not involve any physical violence or use of a weapon, and burglary spree occurred over a relatively short period); U.S. v. Hinds, 803 F. Supp. 675 (W.D. N.Y. 1992) (in illegal reentry case departure from 51 months to 33 months proper where prior marijuana convictions over represented criminal history and where Commission increased guideline for reentry with aggravated felony), aff'd, 992 F.2d 321 (2d Cir. 1993).

5.      **The defendant's addiction to narcotics significantly contributed to her conduct, and diminished her decision making ability**.  **See** U.S. v. Lewinson, 988 F.2d 1005 (9th Cir. 1993) (affirmed 4-level downward departure under §5K2.13 in fraud case even

though some drug use because about half the time no drugs; and even though mental disease not severe and did not affect D's ability to perceive reality; drug use was both "a product and factor of his impaired mental condition").

6.    **The defendant has already been punished by serving pretrial home confinement**. The defendant has essentially been on home confinement since her release.  **See**  United States v. Miller, 991 F.2d 552, 554 (9th Cir.1993)(that  defendant has "already been punished to some extent" by pretrial home detention" is grounds for departure); U.S. v. Carpenter, 320 F.3d 334, 345 (2nd Cir. 2003) (home detention erroneously served can be grounds for departure); *United States v. Romualdi,* 101 F.3d 971(3d Cir.1996)("it may be proper to depart because of the ... home detention [a defendant] had already served.").

7.    **The defendant played a minimal role in the offense**. **See**  U.S.  v. Valdez-Gonzalez, 957 F.2d 643 (9th Cir. 1992) (role in the drug trade play by mules may constitute a mitigating circumstance of a kind or degree not considered by guidelines warranting downward departure); but see U.S.  v. Webster, 996 F.2d 209 (9th Cir. 1993) (effective Nov. 1, 1992, defendant's role in the offense makes couriers eligible for mitigating role adjustments so downward departures on this ground alone not appropriate); U.S.  v. Patillo, 817 F. Supp. 839 (C.D.Cal. 1993) (D was a minor player when he delivered 500 grams of crack to post office, because lived in a community where opportunities to become involved in drug trafficking "are rampant" and D subject to "tremendous financial responsibilities," and where Commission ignored the need for "greater variations in sentencing to account for the vastly different culpabilities of the various players in the drug trade"); U.S.  v. Restrepo, 936 F.2d 661 (2d Cir. 1991) (based on minimal role in a money laundering offense – merely unloading boxes of money in a warehouse on one date – defendant received both a four-level offense level reduction and a four-level downward departure); Alba, 933 F.2d 1117 (2d Cir. 1991); U.S.  v. Bierley, 922 F.2d 1061 (3d Cir. 1990) (minimum role departure available even where defendant sole actor in buying pornography from agent); U.S.  v. Speenburgh, 990 F.2d 72, 75-76 (2d Cir. 1993) (where D ineligible for minor role reduction because other participant is government agent, downward departure proper).

8.    **The defendant had no motive related to profit or financial gain**. Ms. Johnson's motive was to obtain narcotics, not to sell them for profit. **See** U.S. v. Rothberg, 222 F.Supp. 2d 1009  (N.D. Ill. 2002) (where there was no serious claim that defendant committed the offense of copyright infringement "out of a desire to profit, or that he benefited financially from his participation in the conspiracy" and where  the heartland of cases contemplated offenses "motivated by a desire for financial gain--either personally or commercially." case is an atypical one that falls outside the heartland of the Guideline to which he is subject thus permitting a departure).

9.      **The defendant has an extraordinary set of physical impairments and the Bureau of Prisons will not be able to provide adequate care**.  It would be difficult to deny that Ms. Johnson's physical, mental and emotional circumstances, anre anything but extraordinary.  5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence below the guideline range; e.g., in the case of a seriously infirm defendant, *home detention may be as efficient as, and less costly than, imprisonment*." **See  U.S. v. Martin**,  363 F.3d 25, 50 (1ˢᵗ Cir. 2004) (in tax fraud case, three level downward departure proper (and possibly more on remand) where "several serious medical conditions make Martin's health exceptionally fragile [and] ...we are not convinced that the BOP can adequately provide for Martin's medical needs during an extended prison term [and] There is a high probability that lengthy incarceration will shorten Martin's life span);  See  U.S.  v. Gee, 226 F.3d 885 (7th Cir. 2000) (downward departure under §5H1.4 based on health not abuse of discretion where judge reviewed 500 pages of medical records and where judge concluded that "imprisonment posed a substantial risk to [defendant's] life,"  BOP letter stating that it could take care of any medical problem "was merely a form letter trumpeting [BOP] capability"); U.S.  v. Johnson, 71 F.3d 539, 545 (6th Cir. 1995) (under U.S.S.G. §5H1.4, although "rare," downward departure possible for physician convicted of distribution of drugs and mail fraud based on his medical condition where defendant was a 65-year-old man who suffered from diabetes, hypertension, hypothyroidism, ulcers, potassium loss, and reactive depression, but specific findings required);  U.S.  v. Streat, 22 F.3d 109, 112-13 (6th Cir. 1994) (remanded to district court observing that court has discretion to depart because of defendant's "extraordinary physical impairment"); U.S.  v. Long, 977 F.2d 1264, 1277-78 (8th Cir. 1992) (D's extreme vulnerability to victimization in prison justifies downward departure where four doctors said so);  U.S.  v. Greenwood, 928 F.2d 645 (4th Cir. 1991) (where D was felon who possessed firearm, departure to probation proper where D's had severe medical impairment caused by loss of both his legs below his knee due to action in the Korean where D required treatment at Veterans Administration hospital and that incarceration would jeopardize such treatment); U.S.  v. Lara, 905 F.2d 599, 605 (2d Cir. 1990) (same); U.S.  v. Gonzalez, 945 F.2d 525 (2d Cir. 1991) (D's feminine cast and softness of features justifies downward departure because he will be victimized in prison); U.S.  v. Slater, 971 F.2d 626, 635 (10th Cir. 1992) (mental retardation, scoliosis of spine and chronic pain may warrant departure under §5H1.4); U.S.  v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) (loss of both legs in war, which required ongoing treatment that would be jeopardized by incarceration, justified downward departure to probation); but see U.S.  v. Martinez-Guerrero, 987 F.2d 618, 620-21 (9th Cir. 1993) (departure properly denied for legally blind defendant because prison could accommodate him). **See also** U.S. v. Willis, 322 F. Supp. 2d 76, (D. Mass. 2004) (in tax evasion case downward departure granted to 69 year old from 27 months to probation with six months home confinement based upon inordinate number of potentially serious medical conditions, and was at age where such conditions would have invariably gotten worse in prison—in response to government argument that BOP could care for defendant, court said "I have never had a case before me in which the Bureau of Prisons suggested that it did not have the capacity to care for a defendant"); U.S.  v. Jiminez, 212 F.Supp.2d 214 (S.D.N.Y. 2002) (where D convicted of illegal

reentry, downward departure from range of 57-71 required because after crime was committed she has suffered brain aneurism severe memory loss, and psychotic symptoms. *court rejects position of gov. that departure warranted only if physical ailment cannot be adequately treated by BOP*.); U.S. v. Lacy, 99 F.Supp.2d 108 (D.Mass. 2000) (three-level downward departure warranted in drug case where D has bullet in his brain causing lost partial hearing in his left ear, has blood clots in his arteries, and experiences seizures); U.S. v. Hammond, 37 F.Supp.2d 204 (E.D.N.Y. 1999) (defendant in drug case suffering from advanced HIV entitled to a downward departure from 48 to 18 months where family will suffer extraordinary financial and emotional harsh from his incarceration); U.S. v. Gigante, 989 F.Supp. 436 (E.D.N.Y. 1998) (despite vicious criminal past as Mafioso, downward departure granted from 262 months to 144 months because of advanced age (69) and bad heart); U.S. v. Blarek, 7 F.Supp.2d 192, 212-13 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir.1998); U.S. v. Baron, 914 F.Supp. 660, 662-665 (D.Mass. 1995) (in bankruptcy fraud, downward departure from range of 27-33 months to probation and home detention to a 76-year old defendant with medical problems which could be made worse by incarceration); see U.S. v. Moy, 1995 WL 311441, at *25-29, *34 (N.D.Ill. May 18, 1995) (downward departure based upon defendant's advanced age, aggravated health condition, and emotionally depressed state); U.S. v. Roth, 1995 WL 35676, at *1 (S.D.N.Y. Jan. 30, 1995) (63-year-old defendant with neuromuscular disease had "profound physical impairment" warranting downward departure under the Guidelines); U.S. v. Velasquez, 762 F.Supp 39, 40 (E.D.N.Y. 1991) (life-threatening cancer warranted downward departure); U.S. v. Patriarca, 912 F.Supp. 596, 629 (D.Mass. 1995) (same).

10. **Because of the defendant's serious and unique combination of physical, mental, and substance related impairments, home detention is as efficient as, less costly than, and less likely to shorten the life of the defendant than, incarceration.**

11. **The defendant suffers from and extraordinary combination of physical, mental, and substance related problems, not contemplated by the guidelines, but of the type that warrant strong consideration by the Court.**

CONCLUSION

In order to promote respect for the law and in recognition of the crime committed the defendant understands she must be punished for a period of time. However, we ask this Court to conclude that the sentence called for by the advisory guidelines, 15-21 months, is greater than necessary to satisfy the purposes of sentencing set for the § 3553(a). The range does not properly account for the nature of the crime and the defendant's personal characteristics. Instead we ask the Court to impose a significantly lesser sentence, which would allow her to be restricted to her home as she undergoes necessary medical treatment, convalescence and rehabilitation. Such a sentence would be sufficient to promote respect for the law and account for defendant's criminal conduct.

Respectfully,


Robert Y. Altchiler
CT Bar No. 24247
Attorney for the Defendant
181 Old Post Road
Southport, CT 06890
(T) 203.255.0101
(F) 877.495.5970
ALTCHLAW@AOL.COM

## CERTIFICATION

     I, Robert Y. Altchiler, certify that on this, the 13th day of April, 2005, I served by overnight mail a copy of this memorandum on Assistant U.S. Attorney Gordon Hall, at 157 Church Street, New Haven, CT 06510.

_____

Robert Y. Altchiler